STATE NATIONAL BANK OF TEXARKANA *v.* BIRMINGHAM.

## Opinion delivered November 17, 1924.

1. BILLS AND NOTES—INNOCENT PURCHASER.—Crawford & Moses' Dig., § 684, authorizing State banks to lend money on security, did not absolve from liability one obtaining a loan in violation thereof, nor prevent one from becoming an innocent purchaser of a note given without security for such a loan.

2. BILLS AND NOTES—INNOCENT PURCHASER OF COLLATERAL.—One acquiring a promissory note as collateral may be an innocent purchaser.

3. BILLS AND NOTES—INNOCENT PURCHASER—JURY QUESTION.— Where the undisputed testimony showed that plaintiff bank received a note as collateral in the usual course of business and made a loan on the faith of such security, it was error to submit to the jury the question whether plaintiff was an innocent purchaser.

4. EVIDENCE—HEARSAY.—Hearsay testimony that the note in suit had been paid by delivery of checks was incompetent.

5. APPEAL AND ERROR—HARMLESS ERROR—INCOMPETENT EVIDENCE.— The admission of incompetent evidence on a disputed issue will be presumed to be prejudicial.

6. APPEAL AND ERROR—SUFFICIENCY OF BILL OF EXCEPTIONS.—Where a bill of exceptions contained a call for a copy of the record of the chancery court, but the record was inserted elsewhere, it will not be presumed that the bill of exceptions failed to bring up all the evidence.

Appeal from Lafayette Circuit Court; *James H. McCollum*, Judge; reversed.

*Searcy & Searcy*, for appellant.

Instruction numbered one was abstract, and it was error to give same. It in effect instructed that, if appellant had knowledge of any infirmity or defect of title to said note as the assignee thereof at the time it acquired same, it could not recover. There was no testimony upon which the instruction could be based, and it should not have been given. 111 Ark. 134; 88 Ark. 231; 96 Ark. 614; 91 Ark. 14; 77 Ark. 109. It was error to admit the hearsay testimony of J. D. Hanson as to the delivery of the checks.

*Henry Stevens*, for appellee.

Instruction No. 1, about which appellant complains, is substantially the same on the point at issue as his instruction numbered 2, and given by the court, and he cannot now urge that on appeal. 67 Ark. 531; 132 Ark. 450; 85 Fed. 408; 88 Ark. 172; 93 Ark. 589; 94 Ark. 524. Hanson's statement conplained of could not be prejudicial from the fact that Birmingham testified to the same fact. The whole matter was a question for the jury. The court will not reverse where, upon the whole case, the verdict and judgment are correct. 10 Ark. 9; 91 Ark. 97; 89 Ark. 154; 90 Ark. 524; 111 Ark. 550. If the note for which the collateral is given is settled in full, then appellant would not have a right of action on this note. Jones on Pledges, § 540; 41 C. C. A. 176; 64 S. W. 756; 43 S. W. 238.

SMITH, J. The appellant bank sued to recover on a note executed by appellee Birmingham to the order of the Lafayette County Bank, which was by that bank indorsed to appellant as collateral to a loan made the Lafayette County Bank.

The testimony shows that J. D. Hanson was largely indebted to the Lafayette County Bank, and desired to borrow more money, so he applied to appellee to execute the note sued on, promising appellee at the time that other signers would be secured before the note was used. But, without securing other signers, Hanson delivered the note to the Lafayette County Bank and had the proceeds thereof credited to his account.

The Lafayette County Bank borrowed varying sums of money from appellant, which were secured by collateral notes deposited with appellant, and the note of appellee was so used. The note was for the sum of $2,500, was dated March 25, 1920, bore interest at the rate of ten per cent., and was payable November 1, 1920. This note was indorsed and delivered by the Lafayette County Bank in the spring of 1920 to appellant bank, and was thereafter continuously held by appellant bank, along with other collateral, to secure the indebtedness of the Lafayette County Bank to appellant bank. The note was indorsed as follows:

"Lafayette County Bank, Buckner, Arkansas. John M. Bolger, cashier.

"(50c stamps). Pay to the order of any bank, banker, banking or trust company. (All prior indorsements guaranteed).

"State National Bank. 81-75 Texarkana, Ark. 81-75. W. B. Oglesby, cashier."

A line was drawn through the date, October 4, 1920.

It was testified that appellant bank indorsed the note on October 4, 1920, as shown above, and forwarded the note, for collection for its account, to the Lafayette County Bank, along with other notes maturing about that time, and, when a collection was not reported, an officer of appellant bank went to the Lafayette County Bank and took possession of the collateral, and the note sued on has since continuously been in the possession of appellant bank as collateral.

The Lafayette County Bank closed its doors about December 17, 1920, at which time it was indebted to

appellant bank in the sum of $39,000, and appellant bank held notes payable to the Lafayette County Bank for $70,000 as collateral to this indebtedness. These collateral notes had been received from time to time, and, as has been stated, the note sued on was one of them.

The State Bank Commissioner took over the Lafayette County Bank, pursuant to law, and wound up its affairs under the orders of the chancery court of that county, and, after doing so, a dividend of only eight per cent. was paid depositors.

Among other things done by the Bank Commissioner was to make a settlement of the accounts between the two banks, whereby appellant bank released all the direct obligations of the Lafayette County Bank to it, and took in satisfaction thereof certain of the collateral notes which it held. The note in suit was one of the notes assigned to appellant bank by the Bank Commissioner, and appellant bank brought this suit on it as the absolute owner.

Appellee made two defenses. The first was that the note was without consideration, and that appellant bank had not taken it as an innocent purchaser. The second defense was that the note had been paid.

In support of the first defense, it is insisted that the note was taken by the Lafayette County Bank in violation of § 684, C. & M. Digest, which reads in part as follows: "Any bank organized under the laws of this State shall be permitted to receive money on deposit, and to pay interest thereon; * * * to lend money on chattel and personal security, or on real estate secured by deeds of trust * * *." It is insisted that it appears from the face of the note itself that it was taken in violation of this section, in that no one had signed the note as indorser, and no collateral therefor had been taken.

In answer to this contention it may be said that the section of the statute quoted was passed for the protection of depositors of the bank making a loan, and not to absolve from liability one who obtained a loan in violation of its provisions, and there is therefore nothing in

this section which, of itself, would prevent one from acquiring such a note as an innocent purchaser within the meaning of the Negotiable Instruments Act. *City National Bank* v. *DeBaum, ante* p. 18.

Considering further the defense that appellant bank did not acquire the note as an innocent purchaser, for value, before maturity, we have to say that we find no testimony in the record sufficient to raise a question for the jury as to the good faith of appellant bank in acquiring the note as collateral. Appellant bank had no notice that Hanson had negotiated the note to the Lafayette County Bank without authority, and its status as an innocent purchaser is not affected by the fact that it acquired the note as collateral merely. *Newell Contracting Co.* v. *McConnell,* 156 Ark. 558, and cases there cited.

In further support of the defense that appellant did not acquire the note as an innocent purchaser, it is insisted that it was not shown that the cashier of the Lafayette County Bank had ever indorsed the note to appellant bank, or that he had the authority to do so.

In reply to this contention, it may be said that the pleadings do not tender this issue. The note as exhibited to the complaint purported to have been indorsed by the cashier of the Lafayette County Bank, and no testimony was offered that he had not in fact done so, or was without authority to do so. On the contrary, the undisputed testimony shows that appellant bank received the note in the usual course of business, and made a loan of money on the faith of this security. Moreover, appellant bank acquired the title to this note by the assignment to it from the Bank Commissioner in consideration of its release of all direct claim against the Lafayette County Bank.

We conclude therefore that the issue whether appellant bank was an innocent purchaser was improperly submitted to the jury.

Upon the issue of payment, the following testimony was offered: After the Lafayette County Bank closed its doors, Hanson was given checks on that bank by

depositors amounting to $6,700. At this time it was not known that only so small a dividend as eight per cent. would be paid to the depositors, and there was testimony that these checks were delivered to Vance in satisfaction of the note in suit. Vance was the representative of appellant bank, who acted for it in the liquidation of its claims against the Lafayette County Bank. In addition to this testimony, Hanson was permitted to testify that these checks had been so delivered. He was asked how he knew, and he answered: "A. Well, so far as that's concerned, I know it like I know a great many other things that I don't see happen." He was asked what he meant by that, and answered: "By hearsay." A motion was made to exclude this testimony, but the court declined to do so.

This testimony was incompetent, and must be treated as prejudicial, as it does not affirmatively appear not to have been. The jury may have treated this testimony as corroborative of other testimony that the checks had been so used, and this was a sharply controverted fact. Vance denied that he agreed to accept the checks in satisfaction of the note sued on, or that he had received them at all, and the testimony of the receiver of the Lafayette County Bank is to the effect that the checks were indorsed and delivered to him by Hanson's bookkeeper, and that he (the receiver) credited these checks on a note of Hanson payable to the Lafayette County Bank.

There was a verdict in appellee's favor, and a judgment accordingly, which must be reversed on account of the admission of this incompetent testimony.

It is also insisted that the judgment of the court below should be affirmed because it affirmatively appears that the bill of exceptions does not contain all the testimony. The basis of this contention is that counsel for appellee offered in evidence the record of the chancery court showing the settlement of the indebtedness of the Lafayette County Bank which was due appellant bank.

The bill of exceptions recites that this record was offered in evidence, and thereafter follows the direction: "Here copy record," and the record was not copied.

We think this omission was supplied, however, by the recitals immediately following. Counsel for appellee said: "I would like to introduce a copy of that assignment, unless they want the record. This is a copy furnished me by Mr. Tidwell" (the receiver) "showing the matters that were assigned to the State National Bank" (appellant)—"a Bank Commissioner's deed and the assignment." No objection was made, whereupon the Bank Commissioner's deed and assignment, referred to, was introduced in evidence, and it is then copied in full into the bill of exceptions. This instrument was evidently treated as supplying the place of the record itself and answering the first call in the bill of exceptions.

Before admitting this copy of the assignment, the court made the following inquiries: "Is it admitted that it is a copy? Does that report include this particular note? Mr. Stevens (counsel for appellee): Yes sir. Court: Does the note show it was turned over by the Commissioner? Mr. Searcy (counsel for appellant): Yes sir, and this report does, too. Court: Well, do you object to it, Mr. Searcy? Mr. Searcy: No sir."

The deed and assignment shows the order of the court in regard to the note sued on, that order being as herein previously stated, that appellant bank took title to certain collateral (the note in suit being included) in satisfaction of the direct obligations of the Lafayette County Bank to it.

There appears therefore to be no basis for the presumption that testimony might have been offered, but not shown in the bill of exceptions, which authorized the verdict returned and which rendered harmless the erroneous admission of the hearsay testimony set out above.

For the error indicated the judgment of the court below will be reversed, and the cause remanded with directions to submit to the jury the question only

whether there was a payment of the note by the delivery of the checks by Hanson, unless some substantial testi- mony is offered to support the allegations of the answer that appellant was not an innocent purchaser.