HENRY *v.* UNION SAWMILL COMPANY.

Opinion delivered October 25, 1926.

1. SIGNATURES—USE OF MARK.—The mark of one who cannot write is not a *prima facie* signature, unless the person who writes the name writes his own name as a witness to it, but it may be proved as genuine by other testimony, though there be no attesting witness to it.

2. MORTGAGES—EVIDENCE AS TO CONSIDERATION.—As between the parties, parol evidence is admissible to show the true character and consideration of the mortgage.

3. MORTGAGES—PAROL EVIDENCE AS TO CONSIDERATION.—As between the parties to a mortgage, although it is for a definite sum and secures the payment of notes for definite amounts, it may be shown that it is simply one for future advances.

4. MORTGAGES—FORECLOSURE UNDER POWER OF SALE—NOTICE.—In a foreclosure sale under a power in a deed of trust, where notice of the sale was given by publication, it was unnecessary to serve a statement of the account on the grantors.

5. BILLS AND NOTES—BONA FIDE HOLDER.—One taking negotiable paper before maturity as security for a debt without notice of any defect therein or defense thereto is a *bona fide* holder in due course of business for value within the statute.

6. MORTGAGES—FRAUD IN FORECLOSURE.—In a suit to cancel a trustee's deed for fraud, testimony of the grantors that the secured indebtedness had been discharged *held* insufficient to show fraud where plaintiffs attorned to the purchaser at foreclosure sale for three or four years before suing.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Tom Henry and Kansas Henry, his wife, brought suit in equity against J. S. Alphin to cancel a deed of trust from them to J. R. Plair to eighty acres of land in Union County, Arkansas, and a trustee's deed to the same land from the trustee to J. S. Alphin at a foreclosure sale under the power contained in the deed of trust. Subsequently, the Union Sawmill Company instituted an action of ejectment against Tom Henry, in the circuit court, to recover said land. On motion of Tom Henry, the action

in the circuit court was transferred to equity and consolidated with the suit in the chancery court.

The record shows that, on October 3, 1914, Tom Henry and Kansas Henry, his wife, executed a deed of trust to J. R. Plair to eighty acres of land in Union County, Arkansas, to secure an indebtedness of $500, evidenced by the note of Tom Henry and Kansas Henry, payable to the order of J. R. Plair on October 1, 1916, with interest at ten per cent. per annum from date until paid.

J. D. Nelson was named as trustee in the deed of trust, and it contained the usual power of sale. It provided that, if Tom Henry and Kansas Henry should pay the note when due and all other indebtedness due Plair, the deed of trust should be void. In the event of their failure to pay the note or any other indebtedness due Plair, it was provided that the trustee should sell said land for the purpose of paying the indebtedness in the manner and under the terms prescribed in the deed of trust.

Kansas Henry joined with her husband in the execution of the deed of trust. The deed of trust and the $500 note were transferred by J. R. Plair to J. S. Alphin on October 4, 1914. The deed of trust and the note purport to have been signed by Tom Henry and Kansas Henry by their marks. The deed of trust was acknowledged by them before J. C. Wallace on the date of its execution, and has been duly filed of record.

On the 10th day of January, 1907, Tom Henry and Kansas Henry, his wife, conveyed the timber on said land to the Union Sawmill Company, and it was given ten years within which to cut and remove the timber.

On the 1st day of March, 1921, J. S. Alphin conveyed the land to the Union Sawmill Company, reserving a one-eighth interest in the oil, gas and other minerals in said land for a period of fifteen years.

Tom Henry and Kansas Henry made default in the payment of the indebtedness secured by the deed of trust as above set forth, and, on account of the illness of J. D. Nelson, J. K. Mahony was appointed substitute trustee

for the purpose of foreclosing the deed of trust under the power of sale. The sale was made in the manner and under the terms prescribed in the deed of trust, and J. S. Alphin became the purchaser thereof for the sum of $635. The deed of trust recites that this was the highest bid for the land, and was more than two-thirds of its appraised value. It also recites that notice of the time, terms and place of sale had been made in a newspaper of *bona fide* circulation in Union County, Arkansas.

The above facts are undisputed. Other facts bearing on the issues involved in the appeal will be stated under appropriate headings in the opinion.

The chancellor found the issues in favor of J. S. Alphin and the Union Sawmill Company, and a decree was entered of record in accordance with his findings.

To reverse that decree, Tom Henry and Kansas Henry have duly prosecuted an appeal to this court.

*John Bruce Cox, Stewart & Oliver, E. W. McGough,* and *J. R. Wilson,* for appellant.

*Mahony, Yocum & Saye* and *Gaughan & Sifford,* for appellee.

HART, J., (after stating the facts). The evidence introduced by appellee tends to show that J. D. Nelson, the trustee named in the trust deed, became sick, and J. S. Alphin, to whom the deed of trust had been transferred by J. R. Plair, named J. K. Mahony as a substitute trustee. Mahony gave notice of the time, terms and place of sale, and caused said notice to be duly published in a weekly newspaper of *bona fide* circulation in Union County, Arkansas. Mahony also caused the land to be appraised, and sold it for more than two-thirds of its appraised value, as required by statute. J. S. Alphin bid the sum of $635, and, this being the highest bid, the land was struck off to him, and Mahony, as trustee, executed a deed to him in accordance with the provisions of the deed of trust. Alphin then took possession of the land, and subsequently sold it to the Union Sawmill Company.

Counsel for appellants now contend that the deed of trust executed by Tom Henry and Kansas Henry, his wife, to J. R. Plair, is invalid because it appears that their signatures were made by mark, and that there is no attesting witness thereto.    J. C. Wallace was a witness for appellees.    According to his testimony, he was the officer before whom the deed of trust was acknowledged · by Tom Henry and Kansas Henry on October 3, 1914. He read over the deed of trust to them and explained its provisions.    He also read the note for $500 to them, and they executed their signatures to it by mark.    He did not write his name as an attesting witness thereto, because he forgot to do so.    Wallace certified that the grantors, Tom Henry and Kansas Henry, his wife, had signed the deed of trust in his presence, and regarded this as sufficient.    The certificate of acknowledgment to the deed of trust shows that Tom Henry and Kansas Henry, his wife, signed the deed of trust and acknowledged its execution before J. C. Wallace.

In the absence of an affirmative showing that the note and deed of trust were not executed as they purport to have been, they were just as effective as if signed by appellants' written signatures.    A signature to a paper by mark, made by a person for the purpose of identifying himself as a party thereto, was good at common law without any attestation thereof by a subscribing witness. The mark of one who cannot write is not a *prima facie* signature, unless the person who writes the name writes his own name as a witness to it; but it may be proved as genuine by other testimony, though there be no attesting witness to it.  *Ex parte Miller,* 49 Ark. 18, 3 S. W. 883; *Ward* v. *Stark,* 91 Ark. 268, 121 S. W. 382; and *Nail* v. *Kirby,* 162 Ark. 140, 257 S. W. 735.

It is next contended by counsel for appellants that the deed of trust is void for usury.    On this point the testimony of appellants is to the effect that Tom Henry only owed Plair $143, and that a note was executed for $500, for the purpose of enabling Henry to secure future advances, if needed, to make a crop, and that no such

future advances were made. If this testimony be true, it does not help the case of appellants any. As between the parties, parol evidence is admissible to show the true character of a mortgage and for what consideration it was given. Although it is for a definite sum and secures the payment of notes for definite amounts, it may be shown that it is simply one for future advances. Jones on Mortgages, 7th ed., § 384; *Curtis & Lane* v. *Flinn,* 46 Ark. 70; and *Blackburn* v. *Thompson,* 127 Ark. 438, 193 S. W. 74. Hence, under appellants' own testimony, there is no taint of usury.

It is next insisted that no statement of the account was served upon appellants by Alphin at the time of foreclosure. Notice of sale was given by publication, and it was not necessary to serve a statement of the account. *Wilkinson* v. *Hudspeth,* 134 Ark. 132, 203 S. W. 263; and *Straughan* v. *Bennett,* 153 Ark. 254, 266 S. W. 76.

It is also contended that appellants had paid off the deed of trust and that the foreclosure and sale under it were fraudulent. In the first place, the record shows that the mortgage was given by Tom Henry and Kansas Henry, his wife, to Plair for $500, evidenced by note for that amount. The note and mortgage were transferred by Plair to J. S. Alphin before they became due. J. S. Alphin was a *bona fide* purchaser for value. Plair was indebted at the time to Alphin, and transferred the note and deed of trust in question to Alphin in part payment of the indebtedness. Alphin had no notice of any defect or defense to the note. One who takes negotiable paper before maturity, as security for a debt, without notice of any defect therein or defense thereto, is a *bona fide* holder in due course of business for value, within the statute. *Newell Contracting Co.* v. *McConnell,* 156 Ark. 558, 246 S. W. 854; and *State National Bank of Texarkana* v. *Birmingham,* 166 Ark. 446.

Moreover, we do not think that appellants have sustained their contention that there was fraud in the foreclosure of the deed of trust. They testified that they only owed $143 to Plair and that they had paid him

this amount. They claim that the reason for the execution of a note for $500 was for future advances. They testified that the future advances were not made. Their testimony upon this branch of the case is not consistent with the attendant circumstances. They afterwards paid rent to Alphin, and thereby recognized him as the purchaser of the land at the foreclosure sale. Plair had been dead for three or four years before the instigation of the present suit, and appellants knew this. It is hardly probable that they would have waited so long to assert their claim if it had been a *bona fide* one. The natural thing for them to have done, when Alphin claimed to be owner of the land as purchaser at the foreclosure sale, would have been to have gone to Plair and reminded him that the indebtedness secured by the deed of trust had been paid in full. Instead of doing this, they waited until after Plair's death before asserting their claim to the land, and, in the meantime, they had been recognizing Alphin as the owner of the land.

It is also contended that the description of the land in the deed of trust is void on account of being indefinite. The description as contained in the deed of trust is as follows: "SW¼ SE¼ and SE¼ SW¼ section 21, township 17 south, range 12 west, 80 acres, the same now being in possession of parties of the first part, and all cotton and corn which the said party of the first part shall make or cause to be made this year, in the county of Union and State of Arkansas, aforesaid."

This description under the Government surveys shows that the land is situated in Union County, Arkansas. Besides, it recites that the land is in possession of the grantors in the deed of trust and that they have mortgaged all the cotton and corn which they shall make in Union County, Arkansas, in that year. This shows inferentially that the land is situated in Union County, Arkansas. *Tyson* v. *Mayweather,* 170 Ark. 660, 281 S. W. 1.

The result of our views is that the decree of the chancery court is correct, and it will therefore be affirmed.