PATTERSON *v.* WOODWARD.

Opinion delivered November 7, 1927.

1. TRUSTS—DEALINGS WITH TRUST PROPERTY.—The rule that a trustee cannot deal with a trust property to his own advantage against the consent of the *cestui que trust* applies to all trustees.

2. TRUSTS—PURCHASE OF TRUST PROPERTY BY TRUSTEE.—No person should be allowed to purchase an interest in property and hold it for his own use where he has a duty to perform in relation thereto, which is inconsistent with the character of the purchase for his own use.

3. RECEIVERS—BREACH OF FIDUCIARY RELATIONSHIP.—Where a decree fixed the rights of ownership of an undivided interest of individuals in a syndicate organized to acquire oil and gas leases, the purchase by the receiver of the syndicate of an undivided interest of one member thereof was not violative of the fiduciary relationship of the receiver in respect to the property.

Appeal from Columbia Chancery Court; *J. Y. Stevens,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellees instituted this proceeding in the chancery court against appellants for an accounting of the benefits of operating oil wells on certain oil and gas leases in which they had purchased an interest. The proceeding grew out of the purchase by appellees of the interest of M. G. Haskell in certain oil and gas leases involved in the case of *Haskell v. Patterson,* 165 Ark. 65, 262 S. W. 1002, and is, for all practical purposes, a continuation of a branch of that case. Hence a brief statement of the issues in that case, in so far as they relate to the question raised, will be of help.

In the case referred to, Patterson and others brought a suit in equity against Haskell and others to have a trust declared in favor of themselves and their asso-

ciates in an undivided interest in certain oil and gas
leases taken in the name of Haskell, and to have set
aside as fraudulent a conveyance of said leases by Has-
kell to a trustee for the use and benefit of his wife.
According to the allegations of the complaint in that
case, Haskell was a trustee of a syndicate organized for
the purpose of buying oil and gas leases and developing
the same by drilling wells for oil and gas. The syndicate
had a certain amount, which was turned over to Haskell
and used by him in securing oil and gas leases, which he
took in his own name. Haskell then fraudulently trans-
ferred these leases to a trustee for the benefit of his wife.
The prayer of the complaint was that a receiver be
appointed to take charge of the property for the benefit of
the syndicate; that Haskell be enjoined from disposing
of said property, and be required to render a full
account of his dealing with the trust property, and that
the title to said leases be quieted in the plaintiffs in the
action. Haskell filed an answer, admitting that he
acquired the leases in his own name, but denied that he
purchased them for the syndicate with the funds of the
syndicate. After hearing the evidence in the case, the
chancellor made a specific finding that Haskell had pur-
chased the oil and gas leases in his own name with his
own funds, but that the purchase was made in violation
of the terms of the trust agreement, and that he held the
leases in trust for the syndicate; and that the transfer
of the leases by Haskell to a trustee for the benefit of his
wife was without consideration, and void. It was there-
fore decreed that the conveyance by Haskell to the trus-
tee of his wife should be set aside and the title of leases
should be quieted in the plaintiffs, as prayed for in the
complaint. This decree was rendered in the chancery
court on May 4, 1923, and the decree was affirmed in this
court in an opinion delivered on June 23, 1924. *Haskell
v. Patterson,* 165 Ark. 65, 262 S. W. 1002.

On March 26, 1923, parties to that suit agreed to
the appointment of a receiver for the purpose of taking
charge of the property and of developing it by drilling

oil and gas wells and operating the same.  P. S. Grayson, one of the appellees herein, was appointed receiver, and had charge of the property, as such receiver, until February 7, 1925, when he was removed as receiver, and John Marabel was appointed as his successor.  During all the time that Grayson acted as receiver, W. A. G. Woodward, one of the appellees herein, was his superintendent, bookkeeper and general field manager.  On May 5, 1923, M. G. Haskell assigned and transferred to appellees his undivided interest in and to the oil and gas leases involved in the suit of *Haskell* v. *Patterson,* referred to above.  This proceeding was commenced by appellees on the 27th day of July, 1925, and against appellants, in the same chancery court as that which decided the case of *Haskell* v. *Patterson,* referred to above.  Appellants, who were the plaintiffs in that action, filed an answer and cross-complaint, in which they substantially admit all of the allegations above stated, but deny the right of appellees herein to maintain their action, on the ground that it would be a breach of their fiduciary relations as receiver to allow them to purchase any interest in said oil and gas leases.

The case was submitted to the chancellor upon the pleadings, and the court found that appellees acquired legal title to the undivided interest of M. G. Haskell in said oil and gas leases.  The court made a specific finding that appellees were entitled to an accounting of the profits of an undivided nine-thirtieth interest in said oil and gas leases, and that the appellants herein own the twenty-one-thirtieth undivided interest in said oil and gas leases.  To reverse that decree, appellants have duly prosecuted an appeal to this court.

*Joe Joiner* and *Alvin D. Stevens,* for appellant.

*John Bruce Cox* and *C. E. Wright,* for appellee.

HART, C. J., (after stating the facts).  At the outset it may be said that it is a rule of universal application in equity that a trustee shall not deal with trust property to his own advantage against the consent of the *cestui que trust.*  The rule is not confined to any particular class of

trustees, but applies to all who come within its principles. The rule itself is bottomed upon the moral duty growing out of confidence and trust reposed by one and accepted by another in business relations. The principle is that no person should be allowed to purchase an interest in property, and hold it for his own use, where he has a duty to perform in relation to such property which is inconsistent with the character of the purchase for his own use. In the application of this well-settled principle, in *Cook* v. *Martin,* 75 Ark. 40, 87 S. W. 625, 1024, 5 Ann. Cas. 204, it was held that the general rule which refuses to permit a trustee to deal with the trust property in his own behalf will debar a receiver appointed to hold attached property and collect rents therefrom, from purchasing, as against the attaching creditors, a superior outstanding title to the property for the benefit of his wife.

Counsel for appellants rely upon the decision in that case for a reversal of the decree, but we do not think that the facts alleged and admitted in the pleadings in the case at bar call for an application of the principle. Appellants were the plaintiffs in the case of *Haskell* v. *Patterson,* referred to above, and asked that they be declared to have a specific and definite undivided interest in certain oil and gas leases which Haskell had taken in his own name. They do not claim to own the whole interest in the leases. After the suit was commenced, by agreement of the parties, a receiver was appointed to develop and operate the leases of the parties. T. S. Grayson was appointed as such receiver, and continued as such until the 7th day of February, 1925. The decree of the chancery court was rendered on the 4th day of May, 1923, and that decree specifically found the interests of appellants in said oil and gas leases, and entered a decree setting aside the conveyance of Haskell to a trustee for his wife in said leases, and quieted the title to the plaintiffs to their undivided interest in said leases, as alleged in their complaint. It will be remembered that the plaintiffs in that action are the appellants here.

On the next day after the rendition of the decree in the chancery court, Haskell sold his undivided interest in the leases to Grayson and Woodward. The decree of the chancery court was affirmed in this court. So that it will be seen that, at the time Haskell assigned and transferred his undivided interest in the leases, he had a vested interest therein, acquired by the decision' of said chancery court. No one would contend that Haskell would not have had the right to sell his interest to the plaintiffs in that action or to any third person. Haskell is not complaining that Grayson and his associates in the receivership were guilty of bad faith in buying from him. So far as Haskell is concerned, the transaction is valid and binding. His undivided interest in the oil and gas leases belonged to him, and he could do what he pleased with it.

Appellants had an undivided interest in the same leases, but they could not control or direct the sale and transfer of his undivided interest. The sale by Haskell to appellees could in no wise affect the title of appellants to their undivided interest in the oil and gas leases, and we perceive no reason why the purchase by the receiver of the undivided interest of Haskell would be a breach of his duty as receiver, in so far as the interest of appellants is concerned. After he acquired an undivided interest in the leases, he would become jointly interested with appellants in them, and, so long as he continued to have charge of the property and operate it, he would owe appellants the duty of acting in good faith just as much as if he continued to operate the property as a receiver. Therefore we are of the opinion that the chancellor rightly held that the purchase by the receiver of the undivided interest of Haskell, after the decree of the chancery court definitely fixing the rights of appellants and Haskell in the gas leases had been rendered, was not a violation of the fiduciary relationship of Grayson in respect to the property.

There is one aspect of the case which is not very clear from the pleadings. According to the allegations of

appellees, they own an undivided nine-thirtieth interest in said oil and gas leases by purchase from Haskell. It is also fairly inferable from their pleadings that appellants own the remaining undivided twenty-one thirtieth interest in said oil and gas leases. It is true that, in one place in their answer, appellants deny that appellees own an undivided nine-thirtieth interest in said oil and gas leases. The court rendered a decree upon the pleadings, and found that appellees had an undivided nine-thirtieth interest in the oil and gas leases and that the appellants had an undivided twenty-one thirtieth interest in said leases. In the first place, we are of the opinion that, when that part of the answer of the appellants which denies that appellees own an undivided interest in the oil and gas leases is considered with reference to the remainder of the pleadings, appellants seem to mean that their actual sale and transfer by Haskell to them of his interest in the leases was void because made when he was receiver. In any event, this finding on the part of the chancery court did not result in any prejudice to appellants. In the case of *Haskell* v. *Patterson,* referred to above, appellants alleged that they were entitled to an undivided twenty-one thirtieth interest in said oil and gas leases, and the chancery court made a finding in their favor, and it was decreed that they had title to such undivided interest. In the first case the decree vests in them an undivided twenty-one thirtieth interest in said oil and gas leases, and no possible prejudice could result to them from a finding by the court that appellees own the remaining nine-thirtieth interest. The reason is that the pleadings plainly show that Haskell owned the undivided interest which appellants did not claim to have owned, and that he transferred all his interest to appellees. It follows that the decree of the chancellor was correct, and it will therefore be affirmed.