SELIG *v.* MORRISON, CHANCELLOR.

5-1755                                              321 S. W. 2d 769

Opinion delivered March 9, 1959.

[Rehearing denied March 30, 1959]

*Carlton Currie,* for petitioner.

*Henry W. Gregory, Jr.* and *H. Murray Claycomb,* for respondents Barnett, *et al. Paul B. Young,* for respondents Frank G. Bridges, Jr. and Charlotte Mills, Trustees. *Edward L. Wright,* Substituted Trustee *Ad Litem.,* for respondent.

SAM ROBINSON, Associate Justice. The Chancery Court of Jefferson County appointed Edward L. Wright trustee *ad litem* of a testamentary trust created under the will of Ben J. Altheimer, who was a resident of Jefferson County. Mr. Wright was appointed solely for the purpose of conducting pending litigation in which the testamentary trust was at the time involved. Charlotte Mills, Frank G. Bridges, Jr., and Leonard L. Selig are the trustees named by the testator. Mr. Selig objected to the appointment of Mr. Wright as trustee and petitioned this Court for a writ of *certiorari* seeking a review of the chancery court order appointing Mr. Wright. The cause is here on *certiorari.*

There is an alleged *inter vivos* trust set up by Ben J. Altheimer and called the Ben J. Altheimer Foundation (hereinafter called Foundation). During his lifetime Mr. Altheimer, through the ownership of stock in a

corporation, had an interest in some real estate in Pulaski County that has become very valuable. Trustees of Foundation, R. S. Barnett, Jr., Frank L. Webb, John N. Stern, and Hillsman Taylor (Charlotte Mills is also a trustee, but she did not join in the suit), filed suit in Jefferson Chancery Court contending that although the trustees of the testamentary trust held record title to the property involved, Foundation should be declared to be the owner of an interest therein under the terms of the alleged Foundation trust and the testamentary trust.

Frank G. Bridges, Jr., one of the trustees of the testamentary trust, is a beneficiary of Foundation, and Miss Mills is a beneficiary and trustee of both the testamentary trust and Foundation. Mrs. Elsie J. Selig, wife of Leonard L. Selig, one of the trustees of the testamentary trust, and Mrs. Dorothy Frankel, sister-in-law of Mr. Selig, are also beneficiaries of the testamentary trust. Miss Mills, Mr. Bridges, and Mr. Selig, the trustees of the testamentary trust, could not agree on how the defense to the action filed by Foundation should be conducted. As a defense, Mr. Selig wanted to raise the issue of whether the Foundation is a valid trust. Miss Mills and Mr. Bridges felt there was no doubt about the validity of Foundation as a trust and did not want to litigate that question. Mrs. Elsie J. Selig, wife of Leonard L. Selig, trustee of the testamentary trust, is co-guardian of Ben J. Altheimer, Jr., incompetent, a beneficiary of the testamentary trust. As such guardian she filed an intervention in which it is alleged that Foundation is not a valid trust.

As heretofore pointed out, Mr. Bridges, a trustee of the testamentary trust, is a beneficiary of Foundation, and Miss Mills is a beneficiary of both Foundation and the testamentary trust, and she is also a trustee of both. Mrs. Elsie J. Selig, Leonard L. Selig's wife, and his sister-in-law, Mrs. Frankel, have vested interests in the testamentary trust. It is said that if Foundation can be destroyed by showing that it is not a valid trust, the assets of Foundation will revert to the testamentary trust, and in these circumstances Mrs. Selig's and Mrs.

Frankel's interests in the testamentary trust will be increased by about $150,000 each.

In the circumstances of the trustees of the testamentary trust, Mr. Selig, Mr. Bridges and Miss Mills, not being able to agree on a defense to the suit filed by Foundation, Mr. Selig applied to the chancellor for instructions. After a hearing on the petition for instructions, the court appointed Mr. Edward L. Wright as trustee and attorney for the sole purpose of conducting the litigation growing out of the suit filed by Foundation and the intervention filed by Mrs. Selig as guardian for Ben J. Altheimer, Jr. Miss Mills and Mr. Bridges have no objection to the order of the court appointing Mr. Wright as both trustee and attorney. In fact, they, along with the trustees of Foundation, are seeking to sustain the court's order in that respect. But Mr. Selig objects to the court's action in appointing Mr. Wright trustee for the purpose of conducting the litigation, although he does not object to Mr. Wright as attorney. There was no abuse of discretion and the court did not commit error by appointing Mr. Wright trustee.

It is contended that Mr. Selig agreed at the hearing on the petition for instructions that Mr. Wright should be appointed trustee. The record is not clear on that point. But the record is clear that at least neither Mr. Selig nor his attorneys made any objection at the time of the hearing to the appointment of Mr. Wright, and he was in fact appointed at that time. Later, however, before the signing of the formal order of appointment, Mr. Selig did object to the appointment. In the circumstances we do not believe that Mr. Selig would be bound by failing to object to the appointment of Mr. Wright at the hearing when that matter was considered. But we cannot say that the court abused its discretion in appointing Mr. Wright trustee.

Mr. Selig contends that actually he has no personal interest in the outcome of the litigation. It can hardly be said that one has no personal interest in the results of litigation when his wife stands to gain so much. But the mere fact of interest alone is not controlling. It is

220

the nature of the interest that counts here. Foundation is a beneficiary named in the testamentary trust, and if Mr. Selig, a testamentary trustee, can prevail in his contention that Foundation is entitled to nothing, his wife will profit to the extent of about $150,000. In 90 C. J. S. 232, it is said: "A trustee is the agent or representative of the *cestui que* trust, and he must administer the trust solely in the interest of the *cestui*. The trustee owes to beneficiaries of the trust the duty of undivided loyalty, and he must protect their respective interests without partiality or favor." And, further (p. 235): "Where there are several beneficiaries, the trustee owes the same fiduciary duty to all of them to protect their respective interests, without partiality or favor to some beneficiaries at the expense of others. So a trustee owes the same fiduciary duty to a contingent beneficiary as to one with a vested interest in so far as necessary for the protection of the rights of the contingent beneficiary in the trust property."

In *Patterson* v. *Woodward,* 175 Ark. 300, 299 S. W. 619, the Court said: "At the outset it may be said that it is a rule of universal application in equity that a trustee shall not deal with trust property to his own advantage against the consent of the *cestui que trust."*

"One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the *cestui que trust*. He must exclude all selfish interests and also all consideration of the welfare of third persons." Bogert, Trusts and Trustees, Vol. 3, p. 375.

"Although there are exceptions to the rigid enforcement of the rule, it is generally held that a trustee cannot deal with the trust estate or property to his own advantage, or that of a member of his family, without the beneficiary's knowledge or consent . . . As a general rule, contracts or transactions involving self-dealing are invalid, . . . and the rule applies irrespective of fraud, or intent to commit an actual wrong, and regardless of whether the trustee acted in good faith or bad faith. So, also, a transaction infected with self-dealing

is invalid whether or not it is fair, or is based on an adequate consideration, and irrespective of whether injury results to the beneficiary or to the trust estate.'' 90 C. J. S. 254-255.

It is one thing for a disinterested trustee to resist in good faith asserted rights of a beneficiary, but an entirely different thing when such resistance comes from a trustee whose wife, a beneficiary, will gain approximately $150,000 if the trustee can defeat the interest of another beneficiary named by the settlor.

In appointing Mr. Wright, the court said: ''I will direct that Mr. Ed Wright be appointed to represent the testamentary trustees in this matter. There is a strong conflict of interests. There ought to be some way devised of handling this matter  .  .  .   The court is primarily concerned in seeing it is presented in such a way there is no conflict of interest. Each of the trustees has some conflict. The court is not going to disqualify these trustees except so far as this lawsuit is concerned. I want them to abate their action in this lawsuit only. This is not to affect their rights personally. I am appointing Mr. Ed Wright as a single trustee and attorney to act for and in *lieu* of each trustee for and pending final determination of this action  .  .  .   The court has no disposition to ask any of the three trustees not to take any action individually in their personal capacities they may desire. The substitute trustee appointed for the purpose of this lawsuit only, is to have the official capacity.''

It appears that it would be wholly impractical for the testamentary trustees to conduct the litigation. There is a conflict in their personal interests, and the interest of Mr. Selig conflicts with the interest of Foundation, a beneficiary named in the testamentary trust. The trustees disagree sharply on how the case should be conducted. At every step they would have to go to the court for instructions. Actually, the court would be put in the position of having to decide the case to a large extent before it was ever submitted.

Mr. Selig further complains that he had no notice that the court might appoint someone to take his place as trustee for the purpose of conducting the litigation. But even though he may have had no notice, there is no showing that he was thereby prejudiced in any manner. There is nothing to indicate that notice would have enabled him to present anything additional to sustain his view. In fact, he was the one that brought the controversy with the other trustees to a head by petitioning the court for instructions, and the chancellor gave instructions to the effect that Mr. Wright should henceforth handle the litigation.

Undoubtedly in the circumstances the chancery court has the power to appoint an additional trustee. In Scott on Trusts, 2d Ed., Vol. 1, p. 791, it is said: "The court, it would seem, may in exercise of a sound discretion appoint an additional trustee, even though there is no vacancy, where such appointment appears to be conducive to the better administration of the trust." And in Bogert on Trusts and Trustees, Vol. 3, p. 310, it is stated: "And, in cases in which a trustee becomes possessed of a temporary adverse interest but is otherwise competent in every way, suspension until the termination of the adverse interest might prove extremely useful."

Mr. Selig contends that he is entitled to his costs, including his attorney's fee incurred in connection with his resistance to the substitution of Mr. Wright as trustee to conduct the litigation before the court. And we are of the opinion that he should be sustained on that point. No action was actually instituted asking that an additional trustee be appointed for the purpose of conducting the pending litigation. Selig filed a request for instructions, and in the course of that hearing the trial court reached the conclusion that it would be better to appoint a substitute trustee. It was then that Selig filed his petition for a writ of *certiorari,* and this Court thought there was enough merit to the petition to order that the record be sent up for review. In these circumstances we are of the opinion that Selig should not personally have to stand the expenses, including his attorney's fee, grow-

ing out of the petition for *certiorari*. The trial court is therefore directed to allow Mr. Selig his actual expenses incurred in the *certiorari* proceeding, including a reasonable attorney's fee, to be paid by the testamentary trust. We hasten to add, however, that neither the testamentary trust nor Foundation will be liable for any additional expense that Mr. Selig may incur in connection with the pending litigation.

The order of the court appointing Mr. Wright trustee *ad litem* is affirmed.

CARLETON HARRIS, C. J., not participating. GEORGE ROSE SMITH and JOHNSON, JJ., dissent.

GEORGE ROSE SMITH, J., dissenting. The material facts are not in dispute. Four of the five trustees of the Foundation brought suit to recover valuable property held by the testamentary trust. Selig, one of the three testamentary trustees, doubted the validity of the Foundation and consequently doubted its legal right to be recognized as a beneficiary of the testamentary trust. Selig accordingly suggested that the legal existence of the Foundation be put in issue. His two co-trustees, however, considered the Foundation to be a valid trust and refused to join in an attack upon its beneficial interest in the testamentary trust. At this stage of the proceedings there is certainly no reason to doubt the good faith of any of the three testamentary trustees.

Since private trustees, as distinguished from charitable trustees, must act unanimously, it is necessary for them to apply to the court for instructions when a disagreement creates an impasse. Rest., Trusts, § 194. Moreover, a trustee is entitled to the court's instructions "in respect to such matters as . . . who are beneficiaries of the trust." Rest., § 259. Thus Selig had a twofold duty to ask the court whether the validity of the Foundation should be put in issue.

When Selig's petition for instructions came on to be heard, the court simply removed all three testamentary trustees, as far as this case is concerned, and appointed

224

Mr. Wright as trustee *ad litem* to conduct the litigation. No instructions were given to any one, even to Wright. He was left to handle the case as he thinks best, though the ousted trustees were given permission to participate as individuals and in that capacity to present any contentions they choose. Thus Selig's reward for performing his duty in the matter was his temporary removal from his trusteeship.

In approving what I regard as an unprecedented and erroneous action by the trial court the majority seem to rely upon two considerations. Primarily, the opinion emphasizes certain familiar duties of every trustee, such as his duty to act impartially toward all the beneficiaries and his duty to avoid any conflict between his personal interest and his obligations as a fiduciary.

I wholly agree with these principles of law, but they are not really pertinent to this case. That Selig is a trustee and his wife a beneficiary of course creates a conflict of interest, but it is one that the law permits, and properly so. If the trustee's relationship to a beneficiary disqualifies him from acting, then no man can serve as trustee when the beneficiaries include his wife or child and some third person. It goes without saying that the law has not heretofore taken that untenable view. As a matter of fact, it is perfectly permissible for a trustee to be also a beneficiary of the trust, even though a certain conflict of interest undeniably results. Rest., Trusts, § 99.

That the conflict exists is not in itself a basis for removing Selig. If the conflict adversely affected the rights of the other beneficiaries it would be a different matter, but that is not the case. This is a truly adversary proceeding, in which every one concerned is represented by capable counsel. The decision will ultimately be made by the court, not by an interested trustee, and the outcome does not depend upon whether the issues are raised by Selig as trustee, by Wright as trustee, by Selig as an individual, or by another party to the case.

Selig's duty to act with impartiality toward all the beneficiaries is likewise irrelevant. If the Foundation is really void, as Selig contends, his duty requires that he protect the other beneficiaries against the claims of this fictitious entity. Apparently Wright also intends to require the Foundation to prove its validity, but Wright will not be removed for demanding that his adversary prove its case. To require a supposed beneficiary to show that he is not an impostor does not seem to me to be a violation of the trustee's duty to act impartially.

Secondarily, the majority express a fear that the court will be unduly burdened with requests for instructions in the course of the litigation. So far the only question asked has been whether the validity of the Foundation should be put in issue, and that point is evidently going to be litigated. It seems unlikely that any other instructions will be necessary, but even if the requests should prove to be numerous it is the chancellor's responsibility to provide the answers.

To sum up, I think the chancellor's action was erroneous, whether it be regarded as essentially **an order** of removal or an order of appointment. That Selig was related by marriage to beneficiaries of the testamentary trust is undoubtedly a matter that the settlor of the trust took into consideration and is certainly not a ground for disqualification. On the other hand, I do not see that Wright's appointment accomplishes any worthwhile purpose, for he is not in a position to raise any issues that would not be presented in any event by the ousted trustees or by the other parties to the suit. It seems to me that the litigants should be left free to conduct their own lawsuit.

JOHNSON, J., joins in this dissent.