Mary Jane Miller RIEGLER et al
v. Nicholas W. RIEGLER, Jr.

77-63                                              553 S.W. 2d 37

Opinion delivered July 11, 1977
(Division I)

72

*H. B. Stubblefield,* for appellants.

*C. Brantley Buck* and *W. Dane Clay* of *Rose, Nash, Williamson, Carroll, Clay & Giroir,* for appellee.

ELSIJANE T. ROY, Justice. This action involves a controversy between the trustee and the beneficiaries of a trust. Appellee, Dr. Nicholas W. Riegler, Jr., his father, Dr. Nicholas W. Riegler, Sr., and their wives executed a "Declaration And Agreement With Respect To The Doctors Riegler Trust" on June 28, 1957. The declaration provided that appellee and his father held title "as Trustees for their

wives" to a certain parcel of real estate. The declaration authorized the trustees to borrow money and erect a medical clinic on the property which was to be leased to appellee and his father. In accordance with the terms of the declaration the clinic was constructed, leased and rent paid to the Riegler trust.

The declaration provided that one-half of the excess income of the trust was to be distributed to each wife during her lifetime, and thereafter to appellee's children. Upon the death or disability of either trustee the other was to designate a Pulaski County bank as successor co-trustee. Upon the death or disqualification of both trustees, the bank was to serve as sole trustee.

Appellee, as trustee, without court approval, borrowed money and invested it, along with other trust funds, in a parcel of vacant land, which is now involved in this litigation. In 1968, appellee petitioned the chancery court for authority to borrow money to purchase 57 more acres of unproductive real estate. In the same petition he requested permission to borrow funds to erect a building on the previously acquired vacant land.

Appellants sought denial of appellee's petition. Appellants further requested that Dr. Riegler, Sr., be declared physically disabled to serve as trustee and that Dr. Riegler, Jr., be removed as trustee due to the strained relations incident to his divorce from Mary Jane Riegler, a beneficiary of the trust.

On December 22, 1969, the chancellor on exchange denied appellee's requests, removed Dr. Riegler, Sr., as a trustee but allowed appellee to remain as trustee, ordered him to designate a bank as successor co-trustee, and ordered appellee to restore to the trust the full cost of the vacant land with interest.

On September 17, 1975, the court extended the time for appellee to comply with the previous decree. The time for appellee to restore the cost, with interest, of the vacant land was extended to May 15, 1976; and the time for designating

a bank as co-trustee was extended until March 15, 1976.

On November 22, 1976, a hearing was held, and the court removed appellee as trustee and appointed Union National Bank as sole trustee. The court ordered that the vacant land be sold by the trustee but found appellee not personally liable for the land's cost with interest.

Both Dr. Riegler, Sr., and his wife died several years ago. Appellee's five daughters and Mary Jane Miller Riegler, their mother, are now the beneficiaries of the trust. No beneficiary has yet received any income or distribution from the trust.[1]

Appellants contend the lower court erred in allowing appellee to testify concerning previous court decrees and in not holding appellee personally liable for the purchase of the land. Since the admission of testimony is largely within the discretion of the trial court and under appellee's theory his testimony was relevant, we do not find any abuse of discretion here.

Paragraph 2 of the decree entered December 22, 1969, states that the three vacant lots at the Northeast corner of Tenth and Rock Streets in Little Rock are unproductive, and "petitioner, Nicholas W. Riegler, Jr., individually has expressed his willingness to assume the same and restore to the Trust the full cost thereof with interest thereon at the rate of 6% per annum to date . . .; and such acquisition for such consideration has been approved by or for all the beneficiaries of the Trust; therefore, 'The Doctors Riegler Trust' without unnecessary delay will divest itself of said property by conveying same to Nicholas W. Riegler, Jr., individually upon his payment to the Trust of the sum of $43,742.65 with interest from date at the rate of $7.19 per day."

The September 17, 1975, decree extends to May 15, 1976, "The time allowed said Nicholas W. Riegler, Jr., in-

---

[1]At the direction of the trial court and without objection, the accounting of Russell Brown & Company was introduced and indicates as of December 31, 1975, the undistributed income in the Doctors Riegler Trust was $60,-495.24.

dividually, to comply with the provisions of paragraph numbered two of said December 22, 1969 decree. . . ."

At the hearing on November 22, 1976, appellants objected to appellee's testimony as to reasons for failure to comply with the provisions of the aforementioned decrees. The trial court ruled, "That is what I want to hear is why he has not done it. . . . * * * I want to hear it all. It is going to be hard to explain to me why he has not done this in seven years."

As to appellee's testimony, in explaining to the court why he had not carried out the decree, he testified he just could not get any money at that time; that he still had the house on River Oaks which he did not sell until 1972; and that he agreed to pay them what was in it but he could not get the money together. Further testimony was that he could not borrow money on developed property much less undeveloped property; that this had been a real dragged out affair; and that he did not feel he was obligated to buy the property.

These excuses offered by appellee for his failure to comply with the court decrees reflect no legal reason for failure to comply with the court's orders and cannot affect the duty of appellee to restore to the trust the cost of the land with interest.

On cross-examination appellee testified that he did not deny that he was trying to do everything he could to prevent his ex-wife from getting any money out of the trust. Appellee admitted that at the trial whch resulted in alimony to Mrs. Riegler being stopped on June 8, 1975, he testified in his opinion the value of the trust property was between $150,000 and $200,000[2] and that he considered his former wife a beneficiary of the trust at that time.

Without any authority from the trust instrument and without seeking approval from chancery court, appellee, as trustee, used trust funds to purchase unproductive vacant land of no value to the trust but in which he was personally

[2]An exhibit introduced at the November 22, 1976, hearing showed assets of the trust to be $115,473.22 as of December 31, 1975.

interested. The unproductive land was purchased in 1964 in part with the trust's cash and the balance paid by the delivery of a note and mortgage of the trust. The land has produced no income whatsoever for the trust since its purchase. However, the trust has paid interest on the note at various rates. The purchase constituted a breach of appellee's duty to make the trust property productive.

It is well settled that a trustee is held to a high standard of good faith and prudent dealing. He owes a duty of loyalty to the beneficiaries. Restatement (Second) of Trusts § 170 (1959). This Court in *Hardy* v. *Hardy*, 222 Ark. 932, 263 S.W. 2d 690 (1954), quoting from 54 Am. Jur., Trusts § 311, p. 246 (1945), stated:

> A trustee must act in good faith in the administration of the trust, and this requirement means that he must act honestly and with finest and undivided loyalty to the trust, not merely with that standard of honor required of men dealing at arm's length in the workaday world, but with a punctilio of honor the most sensitive. * * *

In the same opinion, quoting from *Hardy* v. *Hardy*, 217 Ark. 296, 230 S.W. 2d 6 (1950), we further stated:

> * * * In administering the trust, the trustee must act for the beneficiaries and not for himself in antagonism to the interest of the beneficiaries; he is prohibited from using the advantage of his position to gain any benefit for himself at the expense of the beneficiaries and from placing himself in any position where his self interest will, or may, conflict with his duties. * * *

See also *Patterson* v. *Woodward*, 175 Ark. 300, 299 S.W. 619 (1927); *Lybarger* v. *Lieblong*, 186 Ark. 913, 56 S.W. 2d 760 (1933).

Appellee stated the land was purchased as a future site for his own medical clinic. Clearly no benefit inured to the beneficiaries from this investment. This investment of trust funds was beneficial only to the trustee.

The declaration of trust provides that the excess income shall be paid to the beneficiaries at convenient intervals by the trustees. Although the trust consists of $60,495.24 of undistributed income, none of the beneficiaries have ever received a distribution.

A trustee has a duty to invest the trust assets in productive property. Restatement (Second) of Trusts §§ 181 and 240 (1959). The purchase of the lots by appellee for his own personal use constituted a breach of trust.

Our cases hold that the beneficiaries may hold the trustee personally liable for a breach of trust. *Clark, Trustee* v. *Spanley, Trustee,* 122 Ark. 366, 183 S.W. 964 (1916); *Davis* v. *Dickerson,* 137 Ark. 14, 207 S.W. 436 (1918).

Restatement (Second) of Trusts § 210 (1959) provides:

(1) If the trustee purchases with trust funds property which it is his duty not to purchase, the beneficiary can

(a) charge him with the amount of the trust fund expended in such purchase, with interest thereon; or

(b) require him to account for the property so purchased.

* * *

On cross-appeal, appellee contends the lower court erred in removing appellee as trustee and appointing Union National Bank in Little Rock as sole successor trustee. We find no merit in this contention.

The acrimonious feelings between appellee and his former wife are reflected in part by the fact that this is the sixth appeal to this Court concerning matters arising from the divorce. The bitterness and ill will are further reflected by Dr. Riegler's testimony that he would do everything he could to prevent his ex-wife, one of the beneficiaries, from getting any money out of the trust.

Restatement (Second) of Trusts, Explanatory Comments § 107 (1959), states several grounds for removal of a trustee, including the refusal to account and showing of favoritism to one or more beneficiaries.

In *Hardy* v. *Hardy*, 217 Ark. 305, 230 S.W. 2d 11 (1950), we stated:

> One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interest of the *cestui que trust*.
> * * *
>
> * * *
>
> Where there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them [Restatement (First and Second) of Trusts § 183].

Here we note that Dr. Riegler purchased unproductive trust property without any authority; that he failed to comply with orders of the lower court for a number of years; that he refused to account to the beneficiaries for a long time after ordered to do so by the court; and that he has intentionally favored his children as remaindermen over his former wife as income beneficiary.

Accordingly, the decree of the chancellor is reversed as to the direct appeal and affirmed as to the cross-appeal.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.